JAMES W. DOUGHERTY and wife *v.* CORNELIUS VANDERPOOL.

1. EVIDENCE: ADMISSION OF IRRELEVANT, ERROR.—It is error to admit irrelevant evidence, if it be of such a character as would be likely to mislead the jury : and, hence, when a depositary of money (without hire) is sued for an alleged balance, it will not be competent for him to introduce in evidence his cash book, and prove that it contained false entries by his clerks, for the purpose of exonerating himself from liability, by showing that the entries were made by his clerks to conceal a theft of his money by them.

2. BAILMENT: DEPOSITARY: LIABILITY OF.—A person is liable for money deposited with his clerks, if it afterwards comes to his use and possession.

3. SAME: SAME: EVIDENCE OF IDENTITY OF MONEY.—Where the issue to be tried is, whether the defendant received the money deposited with his clerk, by the plaintiff, and it is shown on behalf of plaintiff that a parcel of money, about equal in amount to the sum deposited, was found by the defendant in his safe, about the time the deposit was made, and that he did not then claim it; it is not necessary for the plaintiff to prove further the identity of the particular coins and bank bills thus found, with those deposited by him. It is sufficient, if he prove to the satisfaction of the jury, that the money so found belonged to him.

4. INSTRUCTIONS : ERRONEOUS WHEN THEY ASSUME THE EXISTENCE OF A FACT.—It will be error for the court to assume, in a charge to the jury, that a material

fact is proven. Questions of fact should be left to the determination of the jury, without interference from the court.

ERROR to the Circuit Court of Hinds county.     Hon. John Watts, judge.

The facts of the case are very fully stated in the opinion of the court.

*Robb* and *Trimble*, for plaintiffs in error.

*Johnston* and *Shelton*, for defendant in error,
Cited Story on Bailments, §§ 41, 42, 55, 62, 63, 72, 82, 88 ; 1 Greenl. Ev. §§ 117 to 120.

HANDY, J., delivered the opinion of the court.

This action was brought by the plaintiffs in error, to recover of the defendant the sum of $276 06, the balance of various sums of money alleged to have been deposited by the plaintiffs with the defendant, between the 1st January and the 31st March, 1852 ; which balance the defendant refused to pay on demand. An amended complaint, or declaration, was filed, alleging that, on the 1st April, 1854, the defendant had in his possession, the sum of $276 06 belonging to the plaintiffs, which was a balance of money deposited by the plaintiffs' agent in the safe or strong box of the defendant, between the 1st January, 1852, and the 31st March, 1852, and which sum of money the defendant refused to deliver to the plaintiffs on demand.

The answers of the defendant deny all these allegations.

On the trial, the plaintiffs introduced, as a witness, James M. Watson, who testified, in substance, that, about the 1st February, 1852, he went to the defendant, who was then a merchant in Raymond, in this State, and told him that he wished to deposit with him a bag of money belonging to the plaintiff's wife ; that the defendant assented, and took the money, which amounted to $4650 84, and placed it in his iron safe ; that the witness afterwards left, with defendant's clerks, the sum of $1082, less $34 20, which they placed in defendant's iron safe ; and that witness called on the

defendant, about the 11th March, 1852, and received all the money but $276 06; that, in the spring of 1854, witness learned that about $275 or $280 had been discovered in defendant's safe, which could not be accounted for by his clerk, who made the discovery, and witness claimed the money immediately as belonging to the plaintiff's wife; and that, when the demand was first made, the defendant said that the money was his, he thought; but, when again called on, he said that it might belong to the firm of Watson & Vanderpool, which had been dissolved 1st January, 1852. The witness further stated, that he did not demand the balance at the time he withdrew the deposits, because he and defendant had always been intimate friends, and witness thought it might have been lost, and did not wish to hurt defendant's feelings with a suspicion that he withheld it; and that, at the time of making the deposits, he told defendant and his clerk, that they were at liberty to go to the deposits for the purpose of making change.

On cross-examination, he stated, that he, witness, had access to the key of the safe, as also did one Meredith, a clerk in the store, and since dead, and Dr. Baird, who was living with defendant; and the deposits, subsequent to the first one of $4650 84, were made with Dr. Baird. No receipt, or certificate of deposit, was taken; nor did the defendant charge or receive any compensation, nor was he to pay interest for the money; that defendant was absent a great part of the fall and winter; that, if a sum of money had not been discovered in the defendant's safe, witness would never have said anything about the balance; that, directly after he withdrew the deposits, the witness offered to pay Mrs. Dougherty the balance, but she would not have it from him. He could not identify the money found in the safe, as that deposited by him.

Dr. Baird testified, that he lived with defendant (as clerk), from January until October, 1852; that, some time in the spring of that year—he thought in March—the witness discovered, in defendant's safe, about $275 or $280, which he could not account for, and mentioned it to defendant in the course of the spring, after his return from New York, and defendant did not claim the money then. A few weeks after the money was discovered, one Bankston, defendant, and witness, had a conversation, in which Bankston jocularly proposed to lend the money out at interest; and the de-

fendant objected, saying, "that he would be responsible to the owner for it, and it must not be touched." That, before that time, defendant and witness made some examination of the books of defendant; and, after that examination, that defendant did not claim the money; that the money, when found, was wrapped up in brown paper, with witness's name written on the outside of the paper enveloping it; that the money was not witness's, and he thought some friend had deposited it with him, and so said to defendant when he first told him that the money had been found.

On cross-examination, he stated, that he did not recollect whether James M. Watson made any deposits of money with him or not; and that he had no authority from defendant to receive money for him on deposit, so as to charge him. Witness, Meredith, and E. H. Watson (formerly a partner of defendant), had access to the safe key; that the conversation with Bankston was a jocular one, but did not know whether defendant was jesting or not in what he said. Witness was shown a book, which, he said, was the cash book of defendant while he lived with him; and, being asked whether that book was not incorrectly kept, he said it was. The book was then offered in evidence by the defendant. The plaintiffs objected to its introduction; but the objection was overruled, and exception taken thereupon. The book showed balances, entered as profit and loss, amounting, during the year 1851, to about $285, and other erroneous entries of bills, country paper, &c., to a considerable amount, as cash. The witness further stated, that, whilst he was clerk for defendant, his friends were in the habit of leaving parcels of money with him in the iron safe; and that he at first thought that the money belonged to some such friend, and so told defendant; but, on inquiry, could find no such depositor; and after that, defendant said it must belong to the firm of Watson & Vanderpool.

H. G. Bankston testified to the conversation between himself, defendant, and Baird, as stated by Baird.

Samuel G. Marshall, a witness for the defendant, testified, that he lived with defendant in the year 1853; during which time, he and defendant made an examination of defendant's books; that, after the first examination, defendant did not claim the money found by Baird, either as belonging to himself, or to the firm of Watson

& Vanderpool; but he afterwards claimed it as the money of that firm.

The defendant was then called as a witness in his own behalf, and testified, that the books of Watson & Vanderpool were incorrectly kept; that he started for New York in February, 1852, and, when he returned, late in March of that year, he was informed that a sum of $275 or $280 was found by Baird in defendant's iron safe; that he made no examination of his cash book until some time after, and he came to the conclusion that the money belonged to the firm of Watson & Vanderpool some time in October, 1852; that he made no thorough examination of the books, in the spring, when first informed that the money was found; that the witness, Watson, never deposited any money with him; and he never gave any of his clerks authority to receive deposits on his account.

On cross-examination, he stated, that he did not recollect ever having a conversation with Bankston and Baird relative to the money found by Baird; that he made an examination of his cash book in November, 1852, while the witness Marshall was living with him; that the witness Watson may have deposited money with his clerk; but his recollection was, that he did not deposit any with him; that he never carried the key of the safe, and very seldom opened it; and that E. H. Watson, James M. Watson (the witness), Meredith, and Baird, all had access to it; that he never received any bag of money from James M. Watson; and that his cash books were made up and the balances struck by Meredith, his clerk, a nephew of E. H. Watson; that the defendant had nothing to do with these books, except sometimes he made entries in them. There are forced balances on them to about the amount contained in the package found by Baird; that E. H. Watson was insolvent, and was forced to sell all his property before he went to California.

The verdict being for the defendant, the plaintiff moved for a new trial, on various grounds; and that motion being overruled, he excepted.

The first error assigned, is the admission of the cash book of the defendant, offered in evidence in his behalf.

It does not appear for what purpose this book was offered in evidence, and it is not shown to have any relevancy to the issue made, to wit, whether the money of the plaintiffs sued for was

placed in the iron safe of the defendant, and was refused to be delivered over upon demand, by the person entitled to it. Though false entries were made by the defendant's clerks in his books, that fact did not tend to throw any light upon the issue presented. If the evidence was offered for the purpose of showing that the plaintiffs' money had been taken by the defendant's clerks, it was, of itself, not sufficient for that purpose, and was not supported by any other evidence showing that it was so taken; nor does it appear that any such point was presented for consideration upon the trial. It might be true, that the defendant's clerks made false entries upon his books, and that this was done to enable them to conceal the fact that they had taken his money from his iron safe; and still that would not tend to show that the money found in the safe was not the money of the plaintiffs, or that the clerks had taken the money of the plaintiffs deposited there. It would tend rather to show, that if any money was taken by them, it was the defendant's money; for the plaintiffs' money deposited there was not entered upon his books, and it was not, therefore, necessary to a fair showing on the books, that false entries should be made in relation to it; and it might have been taken by the clerks who had access to the safe, without any entry upon the books made for the purpose of concealing the taking of it. This evidence was, therefore, improperly admitted.

The next objection applies to the first, fifth, and eleventh instructions given in behalf of the defendant, in relation to the identity of the money found in the defendant's safe, with that deposited for the plaintiffs. The first of these instructions is as follows: " In this action, the burden of proof is on the plaintiffs; and in order to succeed, they must prove the reception of their money by defendant, and must identify the identical money found in the strong box as their money." To the same effect are the two other instructions referred to.

The rule thus declared by the court, required of the plaintiffs more than was necessary to establish their demand. It was sufficient if the plaintiffs established that the sum of money sued for was placed in the iron safe of the defendant, and came to his hands, and to prove to the satisfaction of the jury that he received that amount of their money, which he refused to deliver over, or to pay

to them. And it should have been left to the jury to determine, from all the circumstances shown in evidence, whether the money shown to have been found by Baird, was not the money of the plaintiffs deposited by their agent Watson. These circumstances it is not deemed proper to remark upon, as the case will be sent back for a new trial, when they can be fully presented for the consideration of the jury. But it is not necessary that the coins or bank notes deposited should be particularized ; it is sufficient to show by the facts and circumstances proved, that the money found in the safe belonged to the plaintiffs, and came to the hands of the defendant. These instructions, therefore, in view of the evidence before the jury, laid down too narrow a rule, and one that was calculated to mislead the jury in determining the question, whether the money found was the property of the plaintiffs or not.

The fourth and sixth instructions are also alleged to be erroneous, because they proceed upon the assumption that the money deposited in the defendant's safe was lost. And we consider the objection well taken. There appears to be no direct proof that the money was lost after it was deposited in the safe ; and if that point was attempted to be made before the jury, in behalf of the defendant, it should have been distinctly submitted for their determination, whether they believed from the evidence that the money was lost from the safe. But these instructions assume that the money was lost, and then declare the rule of the defendant's liability under the circumstances in which the deposit was made. This was calculated to induce the jury to take as proved or granted, the material fact, that the money was lost from the safe ; and the instructions are in this respect erroneous.

The eighth instruction is as follows : " Even if the jury believe from the evidence, that defendant received from Watson, agent of plaintiffs, the first deposit of $4650 84, but that Watson made the subsequent deposits without the knowledge or consent of defendant, and that Watson, as agent, afterwards withdrew a sum equal to the first deposit, then the defendant is not liable for the subsequent deposits."

This instruction is clearly erroneous. The evidence tended to show, that the balance of the money remaining after the withdrawal of the deposits by Watson, came to the hands of the defen-

dant.   If the jury had been satisfied that such was the fact, it is clear that the plaintiffs would have been entitled to recover.   But by the terms of this instruction, they could not, in such case, have found for the plaintiffs.   The instruction should have been qualified by adding, *unless they believe from the evidence that the money sued for was the property of the plaintiffs, and came to the hands of the defendant.*

For these reasons, the judgment is reversed, and the cause remanded for a new trial.